UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG ERVIN WIMBERLY,<br>　　　　Plaintiff,<br>　v.<br>A. CUEVAS,<br>　　　　Defendant. | Case No. 19-cv-08316-SI<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 19 |

This is a *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 in which Craig Wimberly alleges that correctional sergeant Cuevas retaliated against him. Cuevas now moves for summary judgment on the ground that Wimberly did not exhaust administrative remedies before filing this action. Wimberly opposes the motion, arguing that he did exhaust and, alternatively, that he was excused from exhausting because he feared retaliation. For the reasons discussed below, the motion for summary judgment will be granted and the action will be dismissed.

**BACKGROUND**

A.　The Retaliation Claim Asserted

Wimberly alleges the following in his amended complaint: He worked as a porter in a visiting room at San Quentin State Prison and one day reported to his supervisor that he saw sergeant Cuevas take "6 photo ducats out of the photo box," an event that bothered Wimberly because he was "held responsible for the photo-box." Docket No. 9 at 3-4, 7. Wimberly's report about the "theft" irritated sergeant Cuevas, who thereafter told officers not to let Wimberly come to work on his days off any longer (although other inmates were permitted to work for pay on their days off), communicated to staff members to issue disciplinary write-ups against Wimberly whenever

1    possible, and communicated to staff workers to keep Wimberly at work until the entire shift ended.
2    *Id.* at 4.   Before Wimberly lodged his grievance, sergeant Cuevas "sexually harass[ed]" Wimberly
3    for a year by saying things such as "how much do I have kestered up my ass?" and "how much do I
4    rent my ass out for?"  *Id.* at 4-5.  Wimberly filed an unsuccessful inmate appeal on May 15, 2019.
5    *Id.* at 5.  Wimberly received several rule violation reports (RVRs) from subordinates who sergeant
6    Cuevas had enlisted to discipline Wimberly:  an RVR on June 20, 2019 for possession of money or
7    currency; an RVR on November 13, 2019 for "behavior which could lead to violence"; and an RVR
8    for "failure to meet program/work expectations."  *Id.* at 7, 9.

9    　　　　The court reviewed the amended complaint and determined that it stated a claim against
10   sergeant Cuevas for retaliation.  *See* Docket No. 10 at 3.  All other defendants and claims were
11   dismissed.  One of the dismissed claims concerned the crude comments allegedly made by sergeant
12   Cuevas; the court determined that these were nonactionable incidents of verbal harassment.  *See id.*
13   at 3-4; *see also* Docket No. 7 at 3 (citing, inter alia, *Watison v. Carter*, 668 F.3d 1108, 1113 (9th
14   Cir. 2012) ("'the exchange of verbal insults between inmates and guards is a constant, daily ritual
15   observed in this nation's prisons' of which 'we do not approve,' but which do not violate the Eighth
16   Amendment."), and *Austin v. Terhune*, 367 F.3d 1167, 1171-72 (9th Cir. 2004) (upholding summary
17   judgment dismissal of Eighth Amendment claim where prison guard exposed himself for 30-40
18   seconds and made sexually crude comment to prisoner while guard was in elevated, glass-enclosed
19   control booth)).

20

21   B.    Administrative Exhaustion Facts
22   　　　　The following facts are undisputed unless otherwise noted:
23   　　　　The relevant time period started no earlier than July 14, 2017, when Wimberly began
24   working as a porter in the visiting room.  Between that date and the filing of this action in December
25   2019, Wimberly filed three inmate appeals.
26   　　　　The first inmate appeal, SQ-A-18-01123, was dated March 24, 2018, and complained about
27   an RVR Wimberly had received for failing to accept a housing change.  The appeal did not mention
28   Cuevas, any action by him, or anything about the visiting room.

2

1  The second appeal, SQ-A-18-03263-1, was dated September 17, 2018, and claimed that there was insufficient evidence to substantiate an RVR Wimberly received for possessing a cell phone. The appeal did not mention Cuevas, any action by him, or anything about the visiting room.

The third appeal filed by Wimberly, SQ-A-19-01503, was dated May 20, 2019, and was the only inmate appeal that concerned anything that later was mentioned in the amended complaint. In this appeal, Wimberly wrote:

> The instant administrative appeal is lodged within the auspices of Cal. Code Regs. (CCR) tit. 15, §3084.9(a)(5)(A), i.e., predicated on Sexual Harassment in the work place. Appellant has been assigned as a visiting porter here at San Quentin (SQ) Visiting for in excess of one-year now. Sgt. Cuevas, on numerous occasions makes it a point to ask appellant questions like: "How much I have keestered up my ass?; or How much I rent my ass out for? . . . etc. . . . Appellant contends these opprobrious remarks are Staff Sexual Misconduct within the purview of CCR, § 3401.5(a), and should not be given an imprimatur.
>
> Appellant, asserts the aberrant behavior at issue, "did not reasonably advance a legitimate correctional goal." As the courts have well established, the prohibition of disrespectful language, in accord with established precedent, vitiating qualified immunity in subquent [sic] 42 U.S.C. §1983 Civil action. (See *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir 2005); see also *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995) ("prohibiting hostile, sexual, abusive, or threatening language.") Surely, appellant has a state-created liberty interest within the comports of CCR, § 3401.5(a), not to be verbally sexually abused by correctional staff, while performing his compulsory work-related duties at SQ.
>
> Appellant, afraid that Sgt. Cuevas may retaliate for exercising his First Amendment right to report staff misconduct (*Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2005); CCR Section 3401.5(d), (g), has been the "but for" or proximate cause for the dilatory lodgment of this Staff Complaint within the ambit of Penal Code Sections 148.6, and 832.5.)

Docket No. 19-1 at 21, 23 (errors and ellipses in source). For relief, Wimberly asked "[t]hat sgt. Cuevas stop Sexually Harassing appellant." *Id.* at 21.

The third inmate appeal bypassed the first level of review. At the second level, the appeal was "granted in that [a]n inquiry into [Wimberly's] allegation was conducted," during which it was determined that "Staff did not violate CDCR policy with respect to the issues raised." *Id.* at 25. The appeal was denied at the third level. *See* Docket No. 9 at 5; Docket No. 20 at 13 (section G).

3

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, as when a defendant moves for summary judgment against plaintiff on the merits of the plaintiff's claims, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

When a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id.* If material

4

facts are disputed, summary judgment should be denied, and the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.* at 1170-71.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Wimberly's amended complaint is verified (*see* Docket No. 9 at 10-11), and therefore is considered as part of the evidence in opposition to defendants' motion for summary judgment.

**DISCUSSION**

A.   Exhaustion Requirements

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings,

notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id.* at 90. An inmate "need not exhaust *unavailable* [remedies]." *Ross*, 136 S. Ct. at 1858 (emphasis added). An administrative remedy is unavailable if, for example, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or if it is "so opaque that it becomes, practically speaking, incapable of use"; or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

The State of California provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (repealed eff. June 1, 2020).[1] In order to exhaust available administrative remedies within this system, a prisoner must proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his designee. *Id.* § 3084.1(b) (repealed eff. June 1, 2020), § 3084.7(d)(3) (repealed eff. June 1, 2020).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations"). California prisoners are required to lodge their administrative complaint on a CDCR-602 form (or a CDCR 602-HC form for a health care matter). The level of specificity required in the appeal is described

---

[1] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring last year. On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. All the citations in this order to California regulations are to the regulations in place in during the period from 2018 through May 2020, rather than to the current regulations.

in a regulation:

> (3) The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. . . .
>
> (4) The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the [appeal form].

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4) (repealed eff. June 1, 2020).[2] Another regulation provides that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included" in the originally submitted CDCR-602 inmate appeal form. Cal. Code Regs. tit. 15, § 3084.1(b) (repealed eff. June 1, 2020).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016); *e.g., id.* at 659 (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors and prison officials easily identified the pain management committee's involvement in the decision-making process).

---

[2] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting former Cal. Code Regs. tit. 15, § 3084.2); *Sapp*, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.' Cal. Code Regs. tit. 15, § 3084.2(a)"); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"). Those cases are distinguishable, however, because they did not address the regulations as they existed for California prisoners at the time of the events complained of in Wimberly's amended complaint. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other non-CDCR facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals and to state all facts known regarding the issue being appealed.

B.     Wimberly Did Not Exhaust Available Administrative Remedies

Sergeant Cuevas has moved for summary judgment on the ground that Wimberly did not properly exhaust administrative remedies for his claim against Cuevas because he did not file any inmate appeal about the wrongs forming the basis of the retaliation claim in the amended complaint that received a decision from the highest level in the inmate appeals system. Cuevas has demonstrated that the only inmate appeal that Wimberly filed about the events mentioned in the amended complaint that received a decision at the highest level was the third inmate appeal, Log No. SQ-A-19-01503, that complained that Cuevas' crude comments amounted to "sexual harassment in the work place." Docket No. 19-1 at 21, 23.

Defendant has carried his burden to demonstrate that there were available administrative remedies for Wimberly and that Wimberly did not properly exhaust those available remedies. The undisputed evidence shows that California provides an administrative remedies system for California prisoners to complain about their conditions of confinement, and that Wimberly used that inmate appeal system to complain about something mentioned in the amended complaint but not the retaliation claim. The undisputed evidence also shows that the only inmate appeal that received a decision at the third level did not assert that Cuevas had retaliated against Wimberly.

Wimberly argues that his third inmate appeal (i.e., Log No. SQ-A-19-01503) actually did adequately raise the retaliation issue because he mentioned retaliation, the First Amendment, and some retaliation cases. Docket No. 20 at 1. His argument is unpersuasive. Although he did mention retaliation, the First Amendment, and some retaliation cases, the context in which he did so shows that they did not suffice to exhaust any retaliation claim. The third inmate appeal complained of Cuevas' crude remarks and, for relief, asked "[t]hat sgt. Cuevas stop sexually harassing" Wimberly. Docket No. 19-1 at 21, 23. Wimberly did not state that the crude comments were retaliatory or that Cuevas had otherwise retaliated against him. Rather, he tried to explain his apparently late inmate appeal by urging that it was late because he feared that sergeant Cuevas might retaliate against him if he filed an inmate appeal. Wimberly wrote: "Appellant, afraid that Sgt. Cuevas may retaliate for exercising his First Amendment right to report staff misconduct [citations] has been the 'but for' or proximate cause *for the dilatory lodgment* of this Staff Complaint." Docket No. 19-1. No

8

reasonable person reviewing that inmate appeal would have understood that statement to mean that sergeant Cuevas already had retaliated against Wimberly. When compared with the acts of retaliation that were found to state a claim in the amended complaint, the third inmate appeal did not "describe [sergeant Cuevas'] involvement in the issue," and did not "state all facts known and available" to Wimberly "regarding the issue being appealed at the time of submitting the [appeal form]." Cal. Code Regs. tit. 15, § 3084.2(a)(3-4) (repealed eff. June 1, 2020). The inmate appeal was loaded with citations to regulations and cases, but those did not mention any actions of retaliation done by Cuevas. Although reading a description of facts might allow one to deduce the legal theory from those facts, the reverse isn't true: reading a case citation does not enable one to deduce the facts that might support the legal theory. No reasonable person reviewing those citations would have understood that the inmate meant that sergeant Cuevas already had retaliated against Wimberly. Viewing the evidence and reasonable inferences therefrom in the light most favorable to Wimberly, no reasonable fact-finder could conclude that his third inmate appeal that did not describe any acts of retaliation by Cuevas exhausted administrative remedies for a retaliation claim against Cuevas.

As a result of Wimberly's failure to describe any retaliation that had taken place by or at the behest of Cuevas, Wimberly did not "provide the level of detail required by the prison's regulations," *Sapp*, 623 F.3d at 824, and therefore did not properly exhaust his administrative remedies for a claim that Cuevas retaliated against him. *See Ngo*, 548 U.S. at 90. By failing to provide this information, Wimberly failed to provide sufficient information to allow prison officials to take appropriate responsive measures to the problem of which he complains in his amended complaint. Cuevas has carried his burden to show that Wimberly did not properly exhaust his administrative remedies for his claim against Cuevas.

Once defendant Cuevas met his initial burden, the burden shifted to Wimberly to come forward with evidence showing that something in his particular case made the existing administrative remedies effectively unavailable to him. *See Albino*, 747 F.3d at 1172. Wimberly fails to make such a showing.

9

Wimberly argues that his fear of retaliation made the administrative remedies unavailable to him. Fear of retaliation may be sufficient to render the inmate appeal procedure unavailable. *See McBride v. Lopez*, 807 F.3d 982, 984 (9th Cir. 2015). The Ninth Circuit adopted a test that has both a subjective and an objective prong for a prisoner to be excused from exhausting based on fear of retaliation:

> To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable. That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.

*Id.* at 987.

Regardless of whether Wimberly could satisfy the subjective prong, he does not satisfy the objective prong of this test. There is no evidence that Cuevas (or people allegedly working at his behest) ever mentioned anything about inmate appeals or the administrative remedies process. And there is no evidence that Cuevas (or people allegedly working at his behest) said or did anything to indicate there would be payback if Wimberly filed an inmate appeal.

Wimberly declares that he "pulled Sgt. Cuevas to the side one day at [the visiting room after he filed his citizen's complaint] asking him how we could resolve this situation. Sgt. Cuevas, stated, viz., its too late for all that, you'll see." Docket No. 20 at 8. The event is ambiguous in meaning because it is not clear whether Cuevas knew what "this situation" referred to (e.g., Wimberly reporting Cuevas for taking the ducats or Wimberly reporting Cuevas for sexual harassment or something else); not clear what Wimberly meant in asking "how we could resolve this situation"; and Cuevas' alleged statement that "its too late for all that, you'll see" on its face appears to indicate that he had already chosen a course of action rather than that he would embark on a course of action if Wimberly filed an inmate appeal. The evidence that sergeant Cuevas said "'its too late for all that, you'll see'" when Wimberly asked "how we could resolve this situation" would not lead a reasonable prisoner of ordinary firmness to believe that Wimberly was communicating a threat not to use the prison's grievance procedure. The statement itself makes no reference to a grievance or

10

1    to anything else, beyond suggesting a preexisting hostility between the men. "Although the threat
2    need not explicitly reference the grievance system in order to deter a reasonable inmate from filing
3    a grievance, there must be some basis in the record from which the district court could determine
4    that a reasonable prisoner of ordinary firmness would have understood the prison official's actions
5    to threaten retaliation if the prisoner chose to utilize the prison's grievance system. Only then will
6    the threat render the prison grievance system effectively unavailable." *McBride*, 807 F.3d at 988.
7    *McBride* made it clear that the fact that a prison official who has harmed the inmate-plaintiff makes
8    a statement that may seem threatening, but does not indicate an intent to retaliate for filing a
9    grievance, is not alone sufficient to satisfy the objective prong. *Id.* "There is no reason to allow
10   inmates to avoid filing requirements on the basis of hostile interactions with guards when the
11   interaction has no apparent relation to the use of the grievance system." *Id.*

12   Wimberly has not gone beyond showing general hostilities and shown that a reasonable
13   prisoner of ordinary firmness would have believed that Cuevas had said or done something that
14   "communicated a threat not to use the prison's grievance procedure and that the threatened
15   retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance."
16   *McBride*, 807 F.3d at 987; *compare Rodriguez v. City of Los Angeles*, 891 F.3d 776, 793 (9th Cir.
17   2018) (both prongs satisfied for inmate-plaintiff who declared that, the day he turned in a complaint,
18   a sergeant came to his cell to deliver a warning; the sergeant mentioned another inmate who had
19   been badly beaten and assaulted with razor blades, stating "'that's how rats are treated when they
20   lie about my deputies,'" said she could have inmate-plaintiff charged with another crime, and said
21   "for your own good, I'm going to forget you turned in this complaint. Keep your mouth shut."),
22   *with McBride*, 807 F.3d at 988 (in action alleging excessive force, inmate-plaintiff's allegations that
23   the guards threatened him after the beating by saying he was "lucky" because his injuries "could
24   have been much worse" failed to meet the objective prong because an inmate would not have
25   reasonably understood from the statements that the guards intended to retaliate if he filed an appeal),
26   *and Sealey v. Busichio*, 696 F. App'x 779, 780-81 (9th Cir. 2017) (inmate's evidence that medical
27   staff threatened plaintiff that if he "caused any trouble about the medical care, [he] would be
28   transferred to another institution where really bad inmates were and [he] would not receive any

11

1   medical care" satisfied subjective prong but not the objective prong because the statement did not
2   reference the grievance system and there was no objective indication that a reasonable prisoner
3   would have understood that statement to mean the prisoner would be retaliated against for filing a
4   grievance; evidence that other inmates were transferred and other inmates told plaintiff he would be
5   transferred if he filed a grievance did not suffice for objective prong because there was no evidence
6   that medical staff caused those transfers). Wimberly does not make the showing necessary under
7   *McBride* to show that there was a threat of retaliation that rendered the administrative remedies
8   effectively unavailable.

9   Bearing in mind that defendant Cuevas has the ultimate burden of proof on the defense and
10  viewing the evidence in the light most favorable to Wimberly, the court concludes that Cuevas is
11  entitled to judgment as a matter of law on the affirmative defense that Wimberly failed to exhaust
12  administrative remedies for his § 1983 claim.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Docket No. 19. The action is dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies before filing this action.

The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: March 9, 2021

_____
SUSAN ILLSTON
United States District Judge